1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (Bar No. 077785)
Kathryn A. Schofield (Bar No. 202939)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

**E-filing**

ORIGINAL
FILED

JUL 14 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

SCHIFFRIN & BARROWAY LLP
Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH AMADO, Derivatively on Behalf of Nominal Defendant INTUIT INC., <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN M. BENNETT, GREGORY J. SANTORA, SCOTT D. COOK, RAYMOND J. STERN, RICHARD W. IHRIE, LORRIE M. NORRINGTON, ROBERT B. HENSKE, JAMES J. HEEGER, ERIC C.W. DUNN, CHRISTOPHER W. BRODY, MICHAEL R. HALLMAN, DONNA DUBINSKY, WILLIAM V. CAMPBELL, L. JOHN DOERR and DENNIS POWELL, <br><br> Defendants, <br><br> and <br><br> INTUIT INC. <br><br> Nominal Defendant. | Case No. **C06-04344** <br><br> **SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.
48002

1    Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the

2    defendants named herein.

3    ### NATURE AND SUMMARY OF THE ACTION

4    1.    This is a shareholder's derivative action brought for the benefit of nominal

5    defendant Intuit Inc. ("Intuit" or the "Company") against certain members of its Board of Directors

6    (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of

7    fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

8    2.    In gross breach of their fiduciary duties as officers and/or directors of Intuit, the

9    Individual Defendants (as defined herein) colluded with one another to:

10    (a)    improperly backdate dozens of grants of Intuit stock options to Intuit President and

11          Chief Executive Officer Stephen M. Bennett ("Bennett") and several other Intuit

12          executives, in violation of the Company's shareholder-approved stock option plans;

13    (b)    improperly record and account for the backdated stock options, in violation of

14          Generally Accepted Accounting Principles;

15    (c)    improperly take tax deductions based on the backdated stock options, in violation of

16          Section 162(m) of the Tax Code;

17    (d)    produce and disseminate to Intuit shareholders and the market false financial

18          statements and other SEC filings that improperly recorded and accounted for the

19          backdated option grants and concealed the improper backdating of stock options.

20    3.    As a result of the Individual Defendants' egregious misconduct, Intuit has sustained

21    millions of dollars in damages, and Bennett and the other recipients of the backdated stock options

22    have garnered millions of dollars in unlawful profits.

23    ### JURISDICTION AND VENUE

24    4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

25    Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28

26    U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in

27    controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental

28    jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action

SHAREHOLDER DERIVATIVE COMPLAINT                                                                    1
48002

1    is not a collusive one to confer jurisdiction on a court of the United States which it would not

2    otherwise have.

3        5.    Venue is proper in this district because a substantial portion of the transactions and

4    wrongs complained of herein, including the defendants' primary participation in the wrongful acts

5    detailed herein, occurred in this district. One or more of the defendants either resides in or

6    maintains executive offices in this district, and defendants have received substantial compensation

7    in this district by engaging in numerous activities and conducting business here, which had an

8    effect in this district.

9                                **PARTIES**

10       6.    Plaintiff Beth Amado, a citizen of the State of Florida, is, and was at all relevant

11   times, a shareholder of nominal defendant Intuit.

12       7.    Nominal defendant Intuit is a Delaware corporation with its principal executive

13   offices located at 2700 Coast Avenue, Mountain View, California 94043. According to its public

14   filings, Intuit leading provider of business and financial management solutions for small- and mid-

15   sized businesses, consumers and accounting professionals.

16       8.    Defendant Bennett has served as the Company's President and Chief Executive

17   Officer and as a director since January 2000. Upon information and belief, Bennett is a citizen of

18   the State of California.

19       9.    Defendant Gregory J. Santora ("Santora") served as the Company's Chief Financial

20   Officer and Senior Vice President from 1997 to December 2002. Upon information and belief,

21   Santora is a citizen of the State of California.

22       10.   Defendant Scott D. Cook ("Cook"), a founder of Intuit, has served as a director of

23   Intuit since March 1984 and has served as Chairman of the Executive Committee of the Board

24   since August 1998. Cook also served as Intuit's Chairman of the Board from March 1993 through

25   July 1998. From March 1984 to April 1994, Cook also served as President and Chief Executive

26   Officer of Intuit. Upon information and belief, Cook is a citizen of the State of California.

27

28

11.     Defendant Raymond J. Stern ("Stern") served as the Company's Senior Vice President, Strategy and CMO from 2004 to 2005, and had been employed in various capacities in the Company since 1998.  Upon information and belief, Stern is a citizen of the State of California.

12.     Defendant Richard W. Ihrie ("Ihrie") has served as the Company's Senior Vice President and Chief Technology Officer since November 2000.  Upon information and belief, Ihrie is a citizen of the State of California.

13.     Defendant Lorrie M. Norrington ("Norrington") served as the Company's Executive Vice President, Office of the CEO from January 2002 to June 2005, and as Senior Vice President of Intuit's small business division from August 2001 January 2002.  Upon information and belief, Norrington is a citizen of the State of California.

14.     Defendant Robert B. Henske ("Henske") has served as the Company's Chief Financial Officer and Senior Vice President since January 2003.  Upon information and belief, Henske is a citizen of the State of California.

15.     Defendant James J. Heeger ("Heeger") served as the Company's Senior Vice President and General Manager Manager of the Company's Small Business Division from July 1997 to June 2000.  Heeger also served as Chief Financial Officer and Senior Vice President of Administration from April 1995 to July 1997, and as Vice President and General Manager of Supplies Division from December 1993 to April 1995.  Upon information and belief, Heeger is a citizen of the State of California.

16.     Defendant Eric C.W. Dunn ("Dunn") served in various capacities with the Company from 1986 to 2000, including Chief Financial Officer and Senior Vice President and Chief Technology Officer.  Upon information and belief, Dunn is a citizen of the State of California.

17.     Collectively, defendants Bennett, Santora, Cook, Stern, Ihrie, Norrington, Heeger, Dunn, and Henske are referred to herein as the "Officer Defendants."

18.     Defendant Christopher W. Brody ("Brody") has served as a director of Intuit since 1993.  Dutkowsky has also served and as a member of the Compensation Committee of the Board (the "Compensation Committee") since December 2000 and as a member of the Audit Committee

1   of the Board (the "Audit Committee") since at least 1996. Upon information and belief, Brody is a

2   citizen of the State of California.

3         19.    Defendant Michael R. Hallman ("Hallman") has served as a director of Intuit since

4   1993. Hallman has also served as a member of the Compensation Committee since at least 1996,

5   and as a member of the Audit Committee since August 2000. Upon information and belief,

6   Hallman is a citizen of the State of California.

7         20.    Defendant William V. Campbell ("Campbell") has served as a director of Intuit

8   since 1994, and as Chairman of the Board since August 1998. Campbell also served in a non-

9   voting advisor capacity on the Compensation Committee from August 1998 to July 2002.

10  Campbell also served as the Company's Acting Chief Executive Officer from September 1999

11  until January 2000, and as the Company's President and Chief Executive Officer from April 1994

12  through July 1998. Upon information and belief, Campbell is a citizen of the State of California.

13        21.    Defendant L. John Doerr ("Doerr") has served as a director of Intuit since August

14  1990. Doerr also served as a member of the Compensation Committee from April 1996 through

15  July 1998, and from September 1998 through January 1999. Upon information and belief, Doerr is

16  a citizen of State of California.

17        22.    Collectively, defendants Brody, Hallman, Campbell, and Doerr are referred to

18  herein as the "Compensation Committee Defendants."

19        23.    Defendant Donna Dubinsky ("Dubinsky") has served as a director of Intuit since

20  1999. Dubinsky has also served as a member of the Audit Committee since August 2000. Upon

21  information and belief, Dubinsky is a citizen of the State of California.

22        24.    Defendant Dennis Powell ("Powell") has served as a director of Intuit and as

23  Chairman of the Audit Committee since 2004. Upon information and belief, Powell is a citizen of

24  the State of California.

25        25.    Collectively, defendants Brody, Dubinsky, Hallman, and Powell are referred to

26  herein as the "Audit Committee Defendants."

27        26.    Collectively, the Officer Defendants, Compensation Committee Defendants, and

28  Audit Committee Defendants are referred to herein as the "Individual Defendants."

1

## DUTIES OF THE INDIVIDUAL DEFENDANTS

2      27.     By reason of their positions as officers and/or directors of the Company and because

3   of their ability to control the business and corporate affairs of the Company, the Individual

4   Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

5   loyalty, and due care, and were and are required to use their utmost ability to control and manage

6   the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are

7   required to act in furtherance of the best interests of the Company and its shareholders so as to

8   benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each

9   director and officer of the Company owes to the Company and its shareholders the fiduciary duty

10  to exercise good faith and diligence in the administration of the affairs of the Company and in the

11  use and preservation of its property and assets, and the highest obligations of fair dealing.

12      28.     The Individual Defendants, because of their positions of control and authority as

13  directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise

14  control over the wrongful acts complained of herein.

15      29.     To discharge their duties, the officers and directors of the Company were required to

16  exercise reasonable and prudent supervision over the management, policies, practices and controls

17  of the Company. By virtue of such duties, the officers and directors of the Company were required

18  to, among other things:

19      (a)     exercise good faith in ensuring that the affairs of the Company were conducted in an

20              efficient, business-like manner so as to make it possible to provide the highest

21              quality performance of their business;

22      (b)     exercise good faith in ensuring that the Company was operated in a diligent, honest

23              and prudent manner and complied with all applicable federal and state laws, rules,

24              regulations and requirements, including acting only within the scope of its legal

25              authority;

26      (c)     exercise good faith in supervising the preparation, filing and/or dissemination of

27              financial statements, press releases, audits, reports or other information required by

28

law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

(d)     exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

30.     The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

(1)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)     transactions are executed in accordance with management's general or specific authorization;

(b)     transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

31.     Intuit's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

(a)     Reviewing, prior to releasing to the public, the type of financial information, and the presentation of that information, to be included in the Company's annual earnings releases, as well as the annual financial statements to be included in the Company's Form 10-Ks.  This review shall include a discussion of the matters required to be addressed by SAS 61, including (1) discussions with management and the

1   independent auditors concerning any significant issues regarding accounting

2   principles, practices and judgments (including any changes in accounting

3   principles), and (2) discussions with the independent auditors' concerning their

4   judgments about the quality and appropriateness of the Company's accounting

5   principles as applied in its financial reporting;

6   (b)   Performing similar reviews with respect to the Company's Form 10-Qs and

7   quarterly earnings press releases;

8   (c)   In connection with the Committee's review of the quarterly and annual financial

9   statements, discussing with management and the independent auditors the

10   Company's selection, application and disclosure of critical accounting policies, any

11   significant changes in the Company's accounting policies and any proposed changes

12   in accounting or financial reporting that may have a significant impact on the

13   Company;

14   (d)   In connection with the Company's review of the annual financial statements,

15   obtaining and reviewing a report from the independent auditors addressing: (1) all

16   critical accounting policies and practices used, (2) all alternative treatments of

17   financial information within generally accepted accounting principles that have been

18   discussed with management, the ramifications of each alternative and the treatment

19   preferred by the independent auditors, and (3) other material communications

20   between the independent auditors and management, such as any management letter

21   or schedule of unadjusted differences; and

22   (e)   Recommending to the Board whether the annual financial statements should be

23   included in the Annual Report on Form 10-K, based on (1) the Committee's review

24   and discussion with management of the annual financial statements, (2) the

25   Committee's discussion with the independent auditors of the matters required to be

26   discussed by SAS 61, and (3) the Committee's review and discussion with the

27   independent auditors of the independent auditors' independence and the written

28

disclosures and letter from the independent auditors required by Independence

Standards Board Standard No. 1.

### FACTUAL ALLEGATIONS

#### Stock Option Grants to the Officer Defendants

32. At all times relevant hereto the Compensation Committee determined the salaries,

incentive compensation, and stock option awards for executive officers of Intuit and administered

the Company's stock option plans.

33. From 1997 to 2004, the Compensation Committee granted certain Intuit stock

options to the Officer Defendants, as follows[1]:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Bennett | 2/9/01 | $34.0625 | 500,000 |
|         | 9/25/02 | $44.32 | 225,000 |
|         | 7/30/04 | $37.44 | 225,000 |
| Santora | 5/18/00 | $26.125 | 100,000 |
|         | 8/1/00 | $35.00 | 40,000 |
|         | 4/24/01 | $29.38 | 40,000 |
| Cook | 8/1/00 | $35.00 | 100,000 |
| Stern | 8/1/00 | $35.00 | 40,000 |
|       | 4/24/01 | $29.38 | 50,000 |
|       | 9/25/02 | $44.32 | 37,500 |
|       | 7/30/03 | $42.27 | 50,000 |
|       | 7/29/04 | $37.44 | 60,000 |
| Ihrie | 4/24/01 | $29.38 | 50,000 |
|       | 9/25/02 | $44.32 | 37,500 |
|       | 7/30/03 | $42.27 | 50,000 |
| Norrington | 9/25/02 | $44.32 | 50,000 |
|            | 7/30/03 | $42.27 | 100,000 |
| Henske | 1/26/04 | $48.26 | 45,000 |
|        | 7/29/04 | $37.44 | 25,000 |

[1] Exercise prices and numbers of options are not adjusted for the Company's 3-for-1 stock split effective September 30, 1999.

| | | | | |
|---|---|---|---|---|
| Heeger | 6/30/97 | $22.94 | 50,000 | |
| Dunn | 6/30/97 | $22.94 | 50,000 | |

34.     Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of Intuit stock on the date of grant.

35.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

36.     Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

37.     In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Intuit's stock price, as demonstrated in the following chart:

**Summary of Option Grants and Surrounding Stock Price Performance[2]**

| Purported Date of Grant | Exercise Price | Stock Price 15 Trading Days Before Grant | Stock Price 15 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 6/30/97 | $22.94 | $25.88 | $25.00 | 9.0% |
| 5/18/00 | $26.125 | $40.00 | $36.50 | 39.7% |
| 8/1/00 | $35.00 | $43.75 | $46.06 | 31.6% |

---

[2] Share prices are not adjusted for the Company's 3-for-1 stock split effective September 30, 1999.

| | | | | |
|---|---|---|---|---|
| 2/9/01 | $34.0625 | $36.00 | $42.12 | 23.6% |
| 4/24/01 | $29.38 | $24.88 | $32.94 | 12.1% |
| 9/25/02 | $44.32 | $45.53 | $49.86 | 12.5% |
| 7/30/03 | $42.27 | $44.37 | $46.21 | 9.3% |
| 1/26/04 | $48.26 | $52.28 | $49.23 | 2.0% |
| 7/29/04 | $37.44 | $36.34 | $40.47 | 8.1% |
| 7/30/04 | $37.44 | $36.34 | $40.47 | 8.1% |

38.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Intuit stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

## Dissemination of False Financial Statements

39.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

(a)     violated the terms of the Company's shareholder-approved stock option plans;

(b)     violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

(c)     violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

(d)     produced and disseminated to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

40.     The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

(a)     Form 10-K for the year ended July 31, 1997, filed with the SEC on October 15, 1997 and signed by defendants Campbell, Santora, Cook, Brody, Doerr, and Hallman;

(b)     Form 10-K for the year ended July 31, 1998, filed with the SEC on October 23, 1998 and signed by defendants Santora, Campbell, Cook, Brody, Doerr, and Hallman;

(c)     Form 10-K for the year ended July 31, 1999, filed with the SEC on October 12, 1999 and signed by defendants Campbell, Santora, Cook, Brody, Doerr, Dubinsky, and Hallman;

(d)     Form 10-K for year ended July 31, 2000, filed with the SEC on October 13, 2000 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky, and Hallman;

(e)     Form 10-K for year ended July 31, 2001, filed with the SEC on October 5, 2001 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky, Doerr, and Hallman;

(f)     Form 10-K for year ended July 31, 2002, filed with the SEC on September 25, 2002 and signed by defendants Santora, Bennett, Brody, Campbell, Cook, Dubinsky, Doerr, and Hallman;

(g)     Form 10-K for year ended July 31, 2003, filed with the SEC on September 19, 2003 and signed by defendants Bennett, Henske, Brody, Campbell, Cook, Dubinsky, Doerr, and Hallman; and

(h)     Form 10-K for year ended July 31, 2004, filed with the SEC on September 24, 2004 and signed by defendants Bennett, Henske, Brody, Campbell, Cook, Dubinsky, Doerr, Hallman, and Powell.

41. Furthermore, from 1997 to 2004, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

(a) disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

(b) filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

42. On March 18, 2006, *The Wall Street Journal* published an article under the headline "The Perfect Payday" that described similar stock option backdating practices by other companies, including Affiliated Computer Services, Inc. ("ACS"), Comverse Technology, Inc. ("Comverse"), and Vitesse Semiconductor Corporation ("Vitesse"). With regard to ACS and its former Chief Executive Officer Jeffrey Rich, the *Journal* reported:

> On a summer day in 2002, shares of Affiliated Computer Services Inc. sank to their lowest level in a year. Oddly, that was good news for Chief Executive Jeffrey Rich.

> His annual grant of stock options was dated that day, entitling him to buy stock at that price for years. Had they been dated a week later, when the stock was 27% higher, they'd have been far less rewarding. It was the same through much of Mr. Rich's tenure: In a striking pattern, all six of his stock-option grants from 1995 to 2002 were dated just before a rise in the stock price, often at the bottom of a steep drop.

> Just lucky? A Wall Street Journal analysis suggests the odds of this happening by chance are extraordinarily remote -- around one in 300 billion. The odds of winning the multistate Powerball lottery with a $1 ticket are one in 146 million.

> Suspecting such patterns aren't due to chance, the Securities and Exchange Commission is examining whether some options carry favorable grant dates for a different reason: They were backdated.

43. The odds that the pattern of fortuitously-timed stock option grants exhibited by Intuit is the result of chance are similar to, if not greater than, the one in several billion or more odds described by the *Wall Street Journal*. The actual reason for the extraordinary pattern exhibited by Intuit was that the Officer Defendants' stock options were improperly backdated, as alleged herein.

44. On June 9, 2006, Intuit filed its quarterly report with the Securities and Exchange Commission on Form 10-Q for the quarter ended April 30, 2006. Therein, the Company stated:

> *Review of Option Grant Activities*
>
> In light of recent reports in the media of public company stock option practices, including a report from the Center for Financial Research and Analysis, Intuit has begun a voluntary review of our historical stock option grant activities and related accounting treatment. Our board of directors has formed a special committee of independent directors to conduct this internal review with the assistance of independent legal counsel and independent accounting support, and the review is underway and ongoing. In addition, subsequent to our initiation of this review, we received a letter from the Securities and Exchange Commission regarding an informal inquiry, and we have informed the SEC staff of the status of our review. We believe that the financial statements included in this report on Form 10-Q fairly present in all material respects the financial condition, results of operations and cash flows of Intuit for the periods presented. However, additional facts may come to light once the review is complete, and there can be no assurance that we will not determine that we need to change our accounting treatment of stock options granted in prior periods, which may have a material adverse effect on our results of operations for those periods or other periods.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

45. The Officer Defendants breached their fiduciary duties by:

    (a) colluding with the Compensation Committee Defendants to backdate stock option grants;

    (b) colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

    (c) colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d) colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

46. The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

SHAREHOLDER DERIVATIVE COMPLAINT
48002

13

47. The Compensation Committee Defendants breached their fiduciary duties by:

    (a)   colluding with the Officer Defendants to backdate stock option grants;

    (b)   colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

    (c)   colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)   colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

48. The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

49. The Audit Committee Defendants breached their fiduciary duties by:

    (a)   colluding with the Officer Defendants to violate GAAP and Section 162(m);

    (b)   colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (c)   colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

50. The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

51. As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

1     limited to, the additional compensation expenses and tax liabilities the Company was required to

2     incur and loss of funds paid to the Company upon exercise of options.

3                    **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

4            52.     Plaintiff brings this action derivatively in the right and for the benefit of the

5     Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

6            53.     Plaintiff is an owner of Intuit common stock and was an owner of Intuit common

7     stock at all times relevant hereto.

8            54.     Plaintiff will adequately and fairly represent the interests of the Company and its

9     shareholders in enforcing and prosecuting its rights.

10           55.     As a result of the facts set forth herein, plaintiff has not made any demand on the

11    Intuit Board of Directors to institute this action against the Individual Defendants. Such demand

12    would be a futile and useless act because the Board is incapable of making an independent and

13    disinterested decision to institute and vigorously prosecute this action.

14           56.     The Board currently consists of 9 directors: defendants Bennett, Brody, Campbell,

15    Cook, Dubinsky, Doerr, Hallman, and Powell and director Stratton Sclavos. The following

16    directors are incapable of independently and disinterestedly considering a demand to commence

17    and vigorously prosecute this action:

18           (a)    Bennett and Cook, because they are directly interested in the improperly backdated

19                  stock option grants complained of herein;

20           (b)    Brody, Hallman, Campbell, and Doerr, because as members of the Compensation

21                  Committee they directly participated in and approved the improper backdating of

22                  stock options, as alleged herein. Moreover, by colluding with the Officer

23                  Defendants and others, as alleged herein, Brody, Hallman, Doerr, and Campbell

24                  have demonstrated that they are unable or unwilling to act independently of the

25                  Officer Defendants;

26           (c)    Brody, Dubinsky, Hallman, and Powell, because as members of the Audit

27                  Committee they directly participated in and approved the Company's violations of

28                  GAAP and Section 162(m), as alleged herein. Moreover, by colluding with the

SHAREHOLDER DERIVATIVE COMPLAINT                                                              15
48002

Officer Defendants and others, as alleged herein, Brody, Dubinsky, Hallman, and Powell have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(d)     Bennett, Brody, Campbell, Cook, Dubinsky, Hallman, Doerr, and Powell, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein. Moreover, by colluding with the Officer Defendants and others, as alleged herein, Bennett, Brody, Campbell, Cook, Dubinsky, Doerr, Hallman, and Powell have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

57.     Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

**COUNT I**

**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR BREACH OF FIDUCIARY DUTY**

58.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

59.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

60.     As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

(a)     colluding with the Compensation Committee Defendants to backdate stock option grants;

(b)     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

(c)     colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and

accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

61.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

62.    As alleged in detail herein, the Compensation Committee Defendants breached their fiduciary duties by:

    (a)    colluding with the Officer Defendants to backdate stock option grants;

    (b)    colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

    (c)    colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

63.    The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

64.    As alleged in detail herein, the Audit Committee Defendants breached their fiduciary duties by:

    (a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

    (b)    colluding with the other Individual Defendants to produce and disseminate to Intuit shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(c)     colluding with the other Individual Defendants to file false proxy statements and

        false Form 4 filings in order to conceal the improper backdating of stock options.

65.     The Audit Committee Defendants' foregoing misconduct was not, and could not

have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly

benefit the Officer Defendants at the expense of the Company.

66.     As a direct and proximate result of the Individual Defendants' foregoing breaches of

fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

limited to, the additional compensation expenses and tax liabilities the Company was required to

incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
### EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

67.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

forth fully herein.

68.     Each of the Individual Defendants intentionally or recklessly employed devices,

schemes, and artifices to defraud and engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the Company.

69.     The Company relied upon the Individual Defendants' fraud in granting the Officer

Defendants options to purchase shares of Intuit common stock.

70.     As a direct and proximate result of the Individual Defendants' fraud the Company

has sustained millions of dollars in damages, including, but not limited to, the additional

compensation expenses and tax liabilities the Company was required to incur and loss of funds

paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR
### COMMON LAW RESTITUTION/UNJUST ENRICHMENT

71.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set

forth fully herein.

72.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

73.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.      Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.      Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties there is no such interest to report.

/       /       /

/       /       /

/       /       /

/       /       /

Respectfully submitted,

Dated:  July 14, 2006

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

Alan R. Plutzik

Kathryn A. Schofield, Esq.
2125 Oak Grove Road, Suite 120
Walnut Creek, California  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

SCHIFFRIN & BARROWAY, LLP
Eric L. Zagar
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Attorneys for Plaintiff*

SHAREHOLDER DERIVATIVE COMPLAINT
48002

20

## VERIFICATION

I, **Beth Amado** hereby verify that I have reviewed the Complaint and

authorized its filing and that the foregoing is true and correct to the best of my knowledge,

information and belief.

DATE:  _7 - 5 - 06_

**BETH AMADO**